

Signed/Docketed
April 2, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-28930 MER |
| THOMAS G. BRIDGES ) | |
| ) | Chapter 13 |
| Debtor. ) | |

## ORDER

The issue before the Court is not a matter of first impression. Rather, it is a variation on a recurring theme relating to the extent of the Colorado exemption for funds "held in or payable from" individual retirement accounts, 401(k) plans, and other employee benefit plans. Based on the particular facts of this case, the Court agrees with the Chapter 7 Trustee's objection to the Debtor's claimed exemption.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), as it concerns the administration of the estate, and allowance or disallowance of exemptions from the estate.

## BACKGROUND

Debtor Thomas G. Bridges ("Bridges") filed his voluntary Chapter 7 petition on August 9, 2011. The Chapter 7 Trustee objected to the Debtor's claimed exemption in a disbursement from his individual retirement account ("IRA") to an account in First National Bank. The Debtor converted the case to a case under Chapter 13 on October 18, 2012. The Chapter 13 Trustee's objection to the confirmation of the Debtor's Chapter 13 plan is based on her contention the Debtor is not entitled to take the retirement account exemption.[1]

Pursuant to the offer of proof made by Bridges' counsel, and accepted by counsel for the Chapter 13 Trustee, when Bridges was laid off from his job with a company that had a 401(k) plan, Bridges "rolled over" his 401(k) funds to an IRA. In 2009, Bridges withdrew the funds from the IRA and put them into an

---

[1] At the hearing on this matter, the Chapter 7 Trustee's objection to exemption was argued by counsel for the Chapter 13 Trustee.

ordinary bank account. When the Chapter 7 case was filed, there was approximately $12,000.00 in the bank account. During the pendency of the bankruptcy, Bridges continued using the funds to pay expenses. At the time the case was converted to Chapter 13, approximately $3,300.00 remained in the account, and at the time of the hearing, this amount decreased to approximately $1,054.00.

## DISCUSSION

COLO. REV. STAT. § 13-54-102(1)(s) provides:

(1) The following property is exempt from levy and sale under writ of attachment or writ of execution:

> (s) Property, including funds, held in or payable from any pension or retirement plan or deferred compensation plan, including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974", as amended, as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time. . . .

In addition, this Court has noted:

> In construing a Colorado exemption statute, the Court must look to the Colorado rules of statutory construction. *See, e.g., In re Brown*, 387 B.R. 611, 612 n. 1 (D. Colo. 2008). "When interpreting a statute, our primary objective is to effectuate the intent of the General Assembly by looking at the plain meaning of the language used, considered within the context of the statute as a whole." *Dillabaugh v. Ellerton*, 259 P.3d 550, 552 (Colo. Ct. App. 2011) (citing *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)). In *Dillabaugh*, the Colorado Court of Appeals examined the plain meaning of the phrase "retirement plan" as used in the Colorado exemption statute, COLO. REV. STAT. § 13-54-102(1)(s).[2]

---

[2] *In re Sedillo*, 476 B.R. 619, 624 (Bankr. D. Colo. 2012).

In this case, the Court finds the money removed from Bridges' IRA and deposited into either a checking or savings account do not constitute "funds, held in or payable from any pension or retirement plan or deferred compensation plan" as required by COLO. REV. STAT. § 13-54-102(1)(s).  After his job loss, Bridges chose to place his 401(k) funds into an IRA account.  Then he transferred those funds out of the IRA plan and into a regular bank account.  While Bridges urges this Court to liberally construe Colorado's exemptions and find the funds remain exempt, and while the Court recognizes Colorado exemptions are to be construed liberally, nothing in the statute warrants the interpretation Bridges seeks.[3]

Bridges contends the *Dillabaugh* case supports his argument.  However, in *Dillabaugh*, the Colorado Court of Appeals addressed the issue of whether a judgment creditor could garnish an obligation owed to the judgment creditor by the judgment debtor's employer.  To be exempt under COLO. REV. STAT. § 13-54-102(1)(s), the judgment creditor argued, an obligation must possess the attributes of an ERISA-qualified plan or a tax-qualified plan.  Because the obligation at issue did not possess those attributes, the judgment creditor asserted the exemption did not apply.[4]  In reaching its decision, the Colorado Court of Appeals analyzed *In re Ludwig*,[5] written by Chief Judge Tallman of this Court, and found its reasoning adopted a too narrow reading of the statute.  Specifically, contrary to *Ludwig*, the Colorado Court of Appeals found COLO. REV. STAT. § 13-54-102(1)(s) is not ambiguous, and not subject to the legal canons of *noscitur a sociis* or *ejusdem generis*.  The *Dillabaugh* Court then concluded a "retirement plan" as set forth in the statute "is not limited to plans that possess attributes of ERISA-qualified or tax-qualified plans."[6]

Unlike *Dillabaugh*, the issue in this case is not whether Bridges' bank account constitutes a qualified plan.  Rather, Bridges asks this Court to find his withdrawal of funds from a presumably qualified plan and placing them in a regular checking or savings account does not cause the funds to lose exempt

---

[3]  By contrast, the Court's recent decision in a case involving the homestead exemption statute and its accompanying "proceeds statute" noted "proceeds from the sale of a homestead property are exempt from execution or attachment for two years if the proceeds are kept separate and apart from others monies so the proceeds may be always identified."  *In re Bertola*, 2012 WL 1945426, at *2 (Bankr. D. Colo. May 30, 2012), *aff'd*, ___B.R.___, 2013 WL 936436 (10th Cir. BAP Mar. 12, 2013) (citing COLO. REV. STAT. §§ 38-41-201 and 207).  No synonymous provisions appear in COLO. REV. STAT. § 13-54-102(1)(s).

[4]  *Dillabaugh v. Ellerton*, 259 P.3d 550, 552 (Colo. App. 2011).

[5]  345 B.R. 310 (Bankr. D. Colo. 2006).

[6]  *Dillabaugh*, at 554.

status. There is no plan involved in this case. There is only Bridges' bank account. His schedules show he had, on the date of filing, two checking accounts and one business account. One of the checking accounts contained the funds withdrawn from the IRA, and Bridges was apparently taking approximately $225 per month from that account.[7] The Court finds the connection between the IRA from which the funds were withdrawn, in a lump sum, and the regular bank account in to which they were placed, too tenuous to allow them to retain their exempt status as part of a broadly-defined retirement plan, as exempt under *Dillabaugh*.

As Chief Judge Tallman has noted in *In re Pascual*, a case more on point with the present case than *Ludwig*:

> [O]nce a debtor withdraws funds from a qualified retirement plan and deposits them into any type of non-qualified account, such funds lose their character as protected funds and are subject to garnishment under state law; and it follows under bankruptcy law that such funds cannot be exempted by the debtor from property of the estate and are subject to administration by the Chapter 7 Trustee.[8]

The Bankruptcy Appellate Panel for the Tenth Circuit has also addressed this issue in *In re Carbaugh*,[9] in which a debtor received a pre-petition lump sum distribution of $97,436.70 from his retirement plan and placed the post-tax amount in an account with Berthel Fisher & Co. ("BFC"). No other funds were placed into the BFC account. The retirement plan account was not completely liquidated and certain funds remained in the retirement account.

The debtor in *Carbaugh* claimed the non-commingled BFC funds retained their protected status under ERISA and Kansas' exemption for retirement funds and wages. The Bankruptcy Court held the funds still in the retirement account were not property of the estate and the funds in the BFC account were not

---

[7] It is unknown whether the funds were transferred to another, commingled account before spending on Bridges' living expenses.

[8] *In re Pascual*, Case No. 09-21460-HRT (Docket No. 28, Dec. 8, 2009 at p. 3) (relying in part on *Tenneco Inc. v. First Va. Bank of Tidewater*, 698 F.2d 688 (4th Cir. 1983) *and In re Starkey*, 116 B.R. 259 (Bankr. D. Colo. 1990)).

[9] *In re Carbaugh*, 278 B.R. 512 (10th Cir. BAP 2002). *See also In re Wagner*, 2009 WL 1851100 at *4 (Bankr. D. Kan. 2009) ("The fact that Debtor can clearly trace the funds in question from his retirement account, into his bank account, and then to the payment made on his exempt homestead, is irrelevant. Kansas law clearly provides that funds held in a retirement account remain exempt so long as those funds remain 'payable' to an individual . . . the funds in question lost their exempt status upon being paid to Debtor").

exempt under ERISA, nor were they exempt as wages. The Tenth Circuit Bankruptcy Appellate Panel affirmed, citing to *Guidry v. Sheet Metal Workers Nat'l Pension Fund* for the proposition that "'benefits' are protected under the ERISA anti-alienation provision only while they are within the fiduciary responsibility of the fund manager."[10]

Specifically, the *Guidry* Court stated:

Following distribution of benefits to the plan participant or beneficiary, a creditor no longer has a right against the plan. Instead, the creditor must collect directly from the participant or beneficiary or, as here, initiate an enforceable garnishment procedure against a third-party bank who holds the funds paid to the participant or beneficiary.[11]

The *Guidry* Court concluded Mr. Guidry's claim for an exemption of a portion of the disputed funds as wages under COLO. REV. STAT. § 13-54-104 would be allowed.[12]

As it has noted before,[13] this Court finds the Kansas exemption statutes sufficiently similar to the Colorado exemption statutes in question to make the Tenth Circuit Bankruptcy Appellate Panel's analysis equally applicable to Colorado cases involving retirement fund exemptions.

Accordingly, the Court concludes if Bridges' funds had remained in the retirement account, even if it did not meet ERISA-qualified or tax-qualified standards, case law would support an exemption claim. However, no case law upholds the position that once funds are withdrawn and placed into a regular bank account, they somehow retain their exempt status. Moreover, *Guidry* provides no basis for Bridges' claim because, unlike the claimant in *Guidry*, Bridges has not asserted an exemption claim under COLO. REV. STAT. § 13-54-104.

The Court is unpersuaded by Bridges' argument the Trustee's objection should be dismissed because it was not prosecuted. Bridges was aware of the pending objection and the Chapter 13 Trustee's shared position on the Chapter 7

---

[10] *Id.*, at 521 (citing *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1081-82 (10th Cir. 1994)).

[11] *Guidry*, at 1082-83.

[12] *Guidry*, at 1085-86.

[13] *See In re Mary Ann Cook*, Case No. 10-17093 MER, Docket No. 35, September 9, 2010 (unpublished decision).

Trustee's objection to the claimed exemption, and yet did not file a certificate of contested matter or otherwise seek to have the issue resolved so his Chapter 13 case could move forward. Further, the strong preference in the Tenth Circuit is to resolve cases on their merits rather than on procedural technicalities.[14] Thus, the Court finds the objection should not be dismissed.

     IT IS THEREFORE ORDERED the Chapter 7 Trustee's Objection to Exemption is sustained.

Dated April 2, 2013                            BY THE COURT:

                                                        Michael E. Romero
                                                        United States Bankruptcy Judge

---

[14] *See In re Miller*, 2012 WL 2953111, at *6 (Bankr. D. Colo. July 19, 2012) (Slip Copy) (citing *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) and *Gatrell v. City and County of Denver*, 2012 WL 219434, *1 (D. Colo. January 23, 2012)).